May it please the Court, Andrew Jacobs of Tucson, Arizona, for the Plaintiff Appellant, Rebecca Elizabeth Kastl, in matter, and I apologize for my coughing fit earlier this morning. We're here on the appeal of a summary judgment from the District of Arizona, which rests basically on one peg and one peg alone. The idea that the plaintiff, a transitioning male-to-female transsexual, was not a member of any protected class under Title VII, where there are scatterings and bits of other issues floating about in the briefing, that was what the district court did, that and nothing else. And because the district court held that Ms. Kastl was not a member of a protected class, that ruling, with all deference to the district court, respectfully, is simply plain error. It's very well settled in the law of Title VII. The Schwenk case in this circuit, written by Judge Reinhardt, on which Judge Fletcher was on the panel, points out that Title VII protects both men and women. And when we look over at other cases from other circuits that have dealt with, specifically, male-to-female transsexuals, you see Barnes and Smith in the Sixth Circuit making the same point, because people in this area, the defendants, keep raising this argument. They say, well, the plaintiff is neither this nor that. The plaintiff is a transsexual, and that's this unprotected category that somehow is outside of gender. It is degendered. And all these courts have said that's wrong. How do you deal with the Ninth Circuit holding an MGM, then, sexual orientation case, which indicated that sexual orientation is neither a bar to nor a guarantee of a Title VII claim, but basically interpreted the law in the Ninth Circuit as consistent with Price Waterhouse, simply that it's still based on you understand what I'm saying, counsel. Certainly. How do you deal with MGM as the bottom line? Certainly, Your Honor. I mean, basically, I'd say the way I deal with it is that it harmonizes entirely with my argument, because Schwenk is a case that is consistent with Price Waterhouse. Price Waterhouse is a case that says under Title VII, sex stereotyping is a species of sex discrimination. Title VII on its face, of course, refers to sex. It doesn't say gender, though it's the law of this circuit under Schwenk that sex means gender. But sexual orientation, I would say, is a separate issue. Why? Because it's not in the statute. Well, but neither is transsexuals as a class of persons either. I mean, don't you have to basically make a Price Waterhouse-type argument to succeed? I would say no, Your Honor. I would say that we should succeed under a Price Waterhouse argument. I have two separate paths here. Right. And I think the more daring one is the one that says transsexuals are a class because discrimination against them is on account of sex. That was anticipated in the Holloway dissent in the Ninth Circuit. That was the argument of Judge Grady in U Lane. And though U Lane was reversed in the Seventh Circuit, oddly, the opinion that reversed Judge Grady's opinion, saying exactly that, that transsexuals are protected, discrimination against them is discrimination as a matter of sex, the U Lane Seventh Circuit opinion that flipped that is overruled by Price Waterhouse. So I think Judge Grady had it right. But that's not the only way to go to answer your question, I'm sorry. We're talking up to now about placing people in a particular category or characterization of gender. I'd like to get back to what the district court ordered, as I understand it, was to have a blood typing test, correct? Yes, Your Honor. And so, as I understand it, the district court required the plaintiff, in order to plead a case, in effect, to have a blood test? Actually, the blood test is consistent with the court's approach to pleading, but the pleading ruling was two years before the ordered blood test. Right. Because at the outset, the court said you have to plead biologically, male or female, in or out, do this now. Two years later, the court said. And she pled at that, when she did plead, she pled female, correct? Biologically female. Biologically female. Right. Per the direction of the court, it wasn't that Ms. Castle wished to plead that. Ms. Castle, instead, in the original pleading, said, in the alternative, I was discriminated against in either category and am a transsexual female, which we think is consistent with Schwenk. It's consistent with the law addressing these areas and should have been permitted. Okay. Counsel, exactly what are the acts that she claims for discrimination? One was her discharge, and one was the refusal to allow her to use the women's restroom. Any other? No, Your Honor, that's the crux of the claim, is that there was the refusal to permit Ms. Castle to use the restroom, and then the dismissal of Ms. Castle for not accepting that discriminatory policy and ruling of MCCCD. And on the restroom issue, go ahead, Judge Fletcher. Is it possible that their reason for not allowing her to use the women's restroom was rational in the sense that she had not completed the operation, so that she still appeared anatomically to be a male, and that really disturbed the women who were using the restroom? And then, as to her discharge, there had been a lot of complaints about the quality of her teaching, so perhaps there were real reasons for the action that was taken that were not pretextual, and I'd like you really to address those issues. Great. Thanks, Your Honor. Taking the first part of your question first, you said perhaps it was rational to impose the rule that was imposed by the Maricopa County Community College District. However, if one takes the schwank ruling in which you were a panel member, which says that gender is equivalent to sex, then the distinction made in this case is one resting on gender, and one that should not be subjected to a rational basis examination, but rather to the more searching intermediate scrutiny standard as the first response. Coming more to the central object of your question, Judge Fletcher, you're talking about was it non-pretextual, and I would say here that there should have been more discovery and there should have been a more developed record on the matter. There's something very, very important that goes to the heart of the question, the reasonability or pretextuality, if you will, of what MCCCD did. And it's exactly the discovery issue. I want to ask you about the discovery issue because you weren't the counsel below. I recognize that. But you said there should have been more discovery. She didn't put in expert reports in accord with the expert deadline, for example. I spoke inartfully, and what I'm saying is that there's almost no record of pretext in this motion. This is not a pretext motion. The reason the record is poor on appeal is because their whole motion was you are a man. Their motion wasn't about pretext. It spent two paragraphs on pretext, and their entire argument about pretext comes basically down to reiterating the argument that plaintiff is a man. I mean, that's basically all they say. They say, well, it's not pretextual and it's reasonable because plaintiff is really a man. And going to the heart of the question. Counsel? Yes. Is it in the record that the women were complaining about her use of the restroom? There is no actual evidence of the underlying complaint. There is the hearsay statement of the community college district, which was just repeated. Ms. Castle was told this was true. She's not a witness to it being true. We're told that there were these hearsay complaints that women did not like Ms. Castle or perhaps parents of women students did not like Ms. Castle being in the restroom. So that is there. Some kind of a statement that they were really fearful. Is that in the record anywhere? No. There is not a statement of a – first of all, no one is identified as a complainant. Second of all, there's no text of any such complaint. It was supposedly a concern for safety. To be more precise, I thought the complaints stemmed from a group of high schoolers who happened to be at the college for some particular program. The record is poorly developed. The movement did not put the evidence of the underlying complaints directly into the record to let us know. What is in the record? Do we have anything other than that in the record, that it was somebody other than the high school students? The record basically says that some student who was entitled to use and was using the facility made a complaint. That complaint is repeated as hearsay without a quotation. The real sum and substance of what it was, the name of the complainant, we're just left to kind of guess at that, and that's what movement's record is. I have another question, and that is your client doesn't challenge the school's authority to have a men's bathroom and a women's bathroom, correct? That was her deposition testimony, yes, Your Honor. Okay. And so her complaint is that if they have the men's and women's bathrooms, her complaint is that they've asked her, at least at this point, to use the men's bathroom, and that's the crux of her complaint. When her Arizona driver's license says that she's a woman, and this goes exactly back to Judge Fletcher's question I have not finished answering, which is the reasonability or protectuality of this, and you look at this. I'm sorry to interrupt, and I don't want to interrupt your argument, but given that concession, I'm stuck on that concession as well, that the employer could restrict the use of the ladies' room to women. Doesn't your client have to prove that she is a woman in order then to be entitled to access to the women's room? I mean, the short answer, Judge Gorsuch, is yes, a trial. I mean, that should not have been shut down. I mean, there are so many undisputed facts out of their record that are consistent with female gender. Their undisputed fact is Ms. Kastel presented entirely as a female. Their undisputed fact is that the state of Arizona had a driver's license that said Ms. Kastel is female. But that's an evidentiary argument as to whether there's sufficient evidence to create a tribal question of fact. But on the legal question, you'd agree that the relevant legal question is whether or not your client is a woman. No. You would not? I don't, Judge. May I explain? Yeah, no, please. I'm just curious, given that concession that only women can use the women's room. Well, again, I think what we're doing is we're sliding kind of down the slippery slope away from the law of the Ninth Circuit, which is that sex- I'm not sliding down any slope. I'm just asking a serious question, which is, given that concession, don't you have to prove that your client's a woman? And you say no, and I'm very interested in why not. Right, because the law of the Ninth Circuit, and the better view in the law of the circuits, is that Title VII is about gender discrimination and not sex discrimination. This is not a case about genitalia. But even spotting all of that, once you concede that the women's room may be restricted to women, how do you not have to prove that your client's a woman? That's not precisely the deposition testimony that we're talking about, Judge Gorsuch, and the deposition testimony, as I recall it, was Ms. Castle saying it didn't challenge the right to have two sets of restrooms. That does not amount to a concession that the anatomical, purely physiological genitalia examination equals gender. That's the whole point. That's exactly what this case is about. And in one of the cases that they cite, and I really want to answer Judge Fletcher's question on this point- Why don't you just keep answering the questions that are asked? You can get back to it, but don't argue with us that you're not answering. Just answer the questions. The reason that the firing was pretextual and why the movement put in enough evidence of pretextuality to cause this case to go forward on summary judgment, recognizing the district court never even got here, you'd be affirming if you did on the basis of something the district court did not touch if you affirmed and said that the firing was non-pretextual. We can affirm on any basis on a de novo review, correct? Certainly. And I think a good reason the district court didn't go there is because this driver's license thing means that there should have been a trial about this. The cases that are cited in the response brief on appeal here, they cite a case out of the Sixth Circuit that says as a matter of law, there's no Title VII claim for a preoperative male-to-female transsexual. Why? Because in Ohio, this employer, and this is Johnson v. Freshmark, their case, they said the transsexual objected to having to go urinate in the men's john, and the driver's license in that case was a male driver's license. And the Sixth Circuit found that fact to be of true legal importance. And so there was not even a claim as a matter of law for that male-to-female transsexual, like Ms. Kastel then, preoperative. And so there was no claim. And if that is so, then how can it be the case here that making Ms. Kastel go into the restroom that is the opposite of what is on a state-issued driver's license, how can that also be no claim? It's the same business of degendering the plaintiff and saying there's no category that protects them. And that is why it's arguably clear. I have a factual question. After the school brought their view to her attention, and then there's a period of time in which she continues to teach there, although she's moved to the Midwest, she's commuting back to Arizona. Is there any evidence in the record as to what happened during that period of time in terms of her use of the bathroom one way or the other or any bathroom at the school? The only evidence is that she was prohibited at that time from using it. There's not evidence about the actual practice. If I could please reserve one minute. So let me just be clear that there's – after the school made its view known, that's the end of the evidence on that subject? There is no evidence that she continued to use the restroom. She was then prohibited from using it. She tried to use the restroom and then was rejected. Okay. No, Your Honor. Thank you. May it please the Court. I'm Pavneet Singh Yupal on behalf of the Applee-Maricopa County Community College District. Let me say just at the beginning, there will be a mixture of pronouns used today, as has been used in the briefing. We fully respect Mrs. Castle's right to bring this lawsuit, and as a matter of courtesy, we will be referring to her in feminine pronouns. This case is a case about a male who alleges that he or she was discriminated against when this male was not allowed to use the women's restroom. It is undoubted that there are a lot of interesting nuances in this case that might be interesting for counsel to argue and that the Court might find interesting as well. But at the end of the day, this Court is permitted and should affirm the judgment below on any grounds. And this is a discrimination case subject to the traditional McDonnell-Douglas burden-shifting test. At the end of the day, it is the plaintiff's burden of persuasion to come forward with evidence of either pretext or discriminatory animus on the part of my client in order to survive the summary judgment, which was granted by the trial court below. Here, MCCD granted two legitimate nondiscriminatory reasons for its actions in asking for some level of proof that Mrs. Castle had undergone and completed sex reassignment surgery before she would be allowed to use the women's restroom. It is only a burden of articulation on the part of my client, MCCD, and they carry that burden of production. MCCD first articulated that Castle had previously self-identified as a male, as Stephen Robert Castle, and subsequently she had changed both her self-identification and started using the women's restroom. In addition, MCCD carried its burden of production by stating that Castle is not a biological female. It was then the appellant's burden or the plaintiff's burden below to show that the stated reasons were either incorrect or a pretext for discriminatory animus. Can I ask you on your expert's three-point test of what determines biology, one of those was chromosomes, correct? Yes, Your Honor. And she can never change that, is that correct? Your Honor, I'm not an expert on that, but that would seem to be the case. And the second point was self-produced hormones, correct? I believe the... They use an endogenous, okay, I'm trying to use English. And she can't biologically change that, correct? I don't know the answer to that, Your Honor. At least it appeared from the expert's report. So I guess what I'm leading to is that I'm having some trouble understanding why proof of biological sex as defined by even your expert would be relevant here when what she's claiming, in effect, is either that if she is a female, you're not viewing her as sufficiently female, and if she's a male, then you're viewing her as not actually a male. She's given alternative pleadings based on what the perception of the school is. So that's why I'm having trouble squaring that with this blood test biological determination. Maybe you could illuminate for me on that. If I understood correctly, I think you're raising two questions there. First of all, in terms of why this is relevant, it's relevant because we're talking about the bathroom. Perhaps if we were talking about a raise or a promotion, this issue would not have the same relevancy. But we are talking about the bathroom which Ms. Castle concedes that she is not challenging the policy of maintaining male and female sex-segregated bathrooms. It does, Ms. Castle, no benefit to plead in some alternative fashion when her ultimate goal is to be allowed to use the women's restroom. I would submit... What does she get to use that restroom? At what point? Is there a school rule on that? Well, as stated in this case, as set forth in the record, this matter occurred in Arizona. In Arizona, we have a state law on this issue where an individual's legal sex is in fact changed upon completion of sex reassignment surgery  So what effect or what is the evidentiary effect of the driver's license designation based on the letter from her doctor? Absolutely none. Nothing. Nothing at all. Complete zero. Counsel, by my count, argued the driver's license issue five times. But what he neglects to inform the court is that in Arizona, anyone can walk in, fill out a form requesting that their sex be changed from, in this case, male to female, and that will be granted. Your Honor, I could walk in to the Arizona MVD and have my... fill out a form requesting that my sex be changed and that would be granted. And you know what this also shows is that there's no limit on it. You could walk into the MVD and repeatedly have your sex changed. It says absolutely nothing about whether or not, in fact, you are of that biological sex to possess an Arizona driver's license designating you as one sex or the other. And I would submit that the reasons for the designation of sex on that driver's license, which is essentially an identification card, is different from the reasons involved in not permitting someone who is not a woman or a female to use the women's restroom. The same privacy concerns are not implicated in the bathroom use case that are implicated with a driver's license. But in any event, just as the trial court below found, it was not sufficient for the appellant to rest on her driver's license designation, because nothing is required other than filling out a form to get that driver's license changed. And, in fact, as shown in the record, the note from her doctor that the appellant submitted along with that request for the driver's license change actually referred to Ms. Castle with male pronouns and stated... Well, surely that's not any more pertinent than the driver's license self-designation, is it? Perhaps not. Let me get to the more pertinent part about it. Her own doctor's note stated that she would have sex reassignment surgery in the future and that her... Actually, I believe the wording was that her gender would be changed in the future, meaning that it had not been changed as of that time. Where in Arizona law does it make this distinction of sex based on the completion of the surgery? Your Honor, that's in the record, and the statute is Arizona Revised Statute 36-337. And for what purpose does it make that definitional change? Your Honor, the legislative history of that statute is not in the record, but I think it's a common sense statute that I think there's some recognition on the part of the Arizona legislature that when you have an individual who has completed sex reassignment surgery, that that individual's legal sex should in fact be changed consistently with the sex reassignment. Well, oftentimes this reassignment is not a single surgery, and there's multiple surgeries. So under your rule, would she be consigned to use the men's restroom until she had completed all available surgeries and procedures? Your Honor, that was not developed in the record, and you're asking me to speculate on something that has not been developed in the record. What I would say to you is in this case, that issue does not even arise because Ms. Castle did not undergo the surgery, the vaginoplasty or the labioplasty until two years after she had separated from employment with MCCD. What were the reasons given for her termination? Her contract was non-renewed after she obtained another job in Illinois. She was an adjunct professor. She obtained a job in Illinois that paid her a lot more money. She missed, quite literally, the last three to four weeks of class instruction, which led to student complaints, and her teaching was so incomplete in failing to arrange for substitutes, failing to arrange for coverage, failing to care for her students, that those students missed the last four weeks of class and in fact had to be allowed by the district to retake the class. In addition to that, her contract specified that non-renewal, excuse me, that full-time faculty would be given preference as to filling their class schedule, and she was non-renewed on the basis that full-time faculty, in fact, were given preference, leaving no classes for adjunct faculty to teach these computer, Cisco and Unix courses. Going back to your biological requirement, I just want to make sure I understood what you said. When you started out, you said that this case was requiring that determination because it's a bathroom case. If there weren't any bathrooms involved and her claim were simply that she didn't get her contract renewed because she is a transsexual, would the statute require a determination of biology to address that question? That is type seven. This is one of the sort of questions that I can certainly appreciate why you're asking it, but it doesn't apply to the facts of this case. But let me say it this way. If the claim was that I had been discriminated with respect to certain employment benefits, pay or renewal of the contract, on the grounds that I am a transsexual, totally divorced from the term sex, as it appears in title seven, then I would submit that that is not a claim. But you and the rest of the panel do not need to reach that issue in this case, because, A, we are talking about the bathroom, and, B, the actual evidence in this case is not of discriminatory animus towards a transsexual individual. Quite the opposite. The evidence in this case is that Ms. Cassell submitted the claim that she was a transsexual   because she was a transsexual. I understand what your position is. Okay, well, let's take it out of the bathroom and out of just the regular discriminating against her because she's a transsexual. What if she wanted to be a dorm master or whatever they're called, headmaster, counselor in a dorm, in a girl's dorm, and you said she can't be that because you only have female supervised girl students and male supervised, you know, boy and male students. Does she need to prove her biology to state a prima facie claim under Title VII in that case? Perhaps so, Your Honor, depending on how the matter was litigated. In the example that you're using, I have a teaching assistant in mind where I see concerns of students might be, in fact, implicated. I would suggest to you that in that case we might be looking at a BFOQ analysis. But in this case, Your Honor, Ms. Cassell sent two separate e-mails thanking the district for their support as she completed her transition from male to female. And while I appreciate the hypothetical, that hypothetical does not apply in this case. And counsel for the appellant repeatedly during his argument stated that our only claim and the court's only ruling below is that Ms. Cassell is not a member of any protected class. That misstates the ruling below and misstates the record. Our position and the court's ruling was that Ms. Cassell did not prove, did not give any indicia, did not give any admissible evidence that she was, in fact, a member of the protected class that she claimed, female, which, in fact, was her burden. And I leave you with, Your Honor, the appellant's own pleading in her complaint in which she states she is biologically female, determined in accordance with the portion of her brain that determines gender identity, her overall psychology, and as confirmed by two PhDs and at least one doctor. That's what she pled, and she presented absolutely no evidence of it. There were not the two PhD psychologists. Nothing was presented from them. There was nothing presented from this one doctor to verify her sex. And so what I would say is this is not a complicated case. You can affirm on any ground, and there is absolutely no evidence of pretext in this case. Thank you. I'm going to give you a minute for rebuttal. Thanks, Your Honor. Under their experts' Dalbert violative rule, every postoperative male-to-female transsexual is still a man. They'd all have to use the men's restroom forever. That's one of the many reasons why the question can't in this record be, is there enough evidence of female, because they don't have a quantum of evidence that makes any sense that Ms. Castile is only a male. That rule is inoperative and would repeal all federal case law in the district courts and circuit courts about transsexualism. They say that there was no proof presented that Ms. Castile was a female or of the gender woman, and I guess they're just picking and choosing, because they're saying a driver's license is no proof. I don't understand the logic under which this statute over here about birth certificates is entitled to wait, but we're not supposed to think about why the Arizona legislature said, as a matter of law, when someone says F on their driver's license, someone's supposed to treat them like a female. Legislators pass that law in Arizona. It matters just as much as the birth certificate law. It may not be everything, but it cannot be no quantum of information. Thank you for your time, Your Honors. Thank you. The case just argued, Castile v. Maricopa County, is submitted. I do also want to especially thank you, Mr. Jacobs. I know that you took this case under our pro bono program, and I know both from the perspective of the court and I am sure also from the perspective of the college, it's much easier for us to deal with capable counsel presenting these arguments rather than often in these complicated cases having someone appear pro se. Of course, pro se often can make a very good argument, but this is very complicated and issue a first impression in many respects. So I do want to thank you and your firm for the time that you've put into the case. With that, this case is submitted, and we'll take a short break.
judges: Fletcher, McKeown, Gorsuch